L. Kingsley Smith, J.
This is an action to foreclose a mortgage on real property in Queens County. The original mortgage given to secure the sum of $14,000 was recorded in the office of the Register of Queens County on February 6, 1958. The mortgage was assumed by the defendants Williams by an extension agreement dated July 16, 1958. This action was commenced on or about June 20, 1963. The only defendants who have appeared in the action are the United States of America and the State Tax Commission of the State of New York. An order of this court dated August 26, 1963 appointed a Referee to ascertain and compute the amount due the plaintiff upon the bond and mortgage under foreclosure. The Referee having held a hearing and rendered his report, the plaintiff now moves for an order confirming the Referee’s report of computation and entering judgment of foreclosure and sale. Attached to the moving papers is a proposed form of judgment of foreclosure and sale.
The United States of America opposes the plaintiff’s motion upon the ground that plaintiff’s proposed judgment does not accord lawful priority to a judgment held by the United States of America and which is a lien against the mortgaged premises. The plaintiff has provided in the second decretal paragraph of the proposed judgment that the Referee appointed to sell the mortgaged premises at public auction shall sell such premises, among other things “ subject to all taxes, assessments, water rates and sewer rents.” It is further provided in respect of payments to be made by the Referee from the proceeds of sale that there be paid to the plaintiff ‘ ‘ the amounts paid by Plaintiff for taxes, insurance, or the preservation of the property from the date of said Referee’s report of a computation”. Those provisions of the proposed judgment are the basis for the contention that the Federally-held judgment is not accorded its lawful priority.
The judgment now held by the United States of America is derived from a loan originally made by Manufacturers Hanover Trust Company to the defendant mortgagors. The lender in that transaction subsequently recovered a judgment against the defendant mortgagors in the amount of $1,912.08 which judgment was filed March 27, 1962, perfected February 23, 1962 and thereafter was assigned to the United States of America pursuant to the National Housing Act and filed on July 24,1962.
*1000 The court is confronted in this action with another aspect of the continuing controversy involving Federal priorities. The extensive litigation revolving around Federal tax liens, priorities and procedures has been, and continues to be, a source of grave concern to the business community and to the legal profession. The serious problems raised by the series of Supreme Court decisions which, since 1950, have extended the priorities of Federal tax liens have not only resulted in extensive discussion and analysis in legal circles, but have given rise to proposals for remedial legislation by Congress. (Report of the Committee on Federal Liens, American Bar Association Reports, 1958, p. 453; Final Report of Committee on Federal Liens, American Bar Association Reports, 1959, p. 645; Plumb, 1 ‘ What Ever Happened to the A. B. A. Federal Tax Lien Legislation? ”, 18 Business Lawyer 1103 [July, 1963].)
For that segment of the business community which lends money on the security of real estate mortgages, the decisions involving Federal tax liens are especially disturbing. It has been reported that over 250 billion dollars is invested in nonfarm mortgage debt in the United States. (Creedon, “ On Mortgage Foreclosures and Federal Tax Liens, The Lender’s Defeat in Victory”, 18 Business Lawyer 1117 [July, 1963].) Despite the concern over the impact of the Federal tax lien decisions, the remedial legislation proposed has met with inaction through two Congresses and identical legislation has been introduced for the third time. (Plumb, “What Ever Happened to the A. B. A. Federal Tax Lien Legislation? ”, supra.) It is with a keen awareness of the challenge which the problem of Federal priorities poses for mortgage lenders that the court approaches the controversy involved on this motion.
In this matter, as it has in similar recent situations, the Federal Government seeks to extend the priority which has been accorded its tax liens to the Federally-held judgment lien. Acceptance of the position urged by the Federal Government in respect of its judgment liens necessarily enlarges the already complex and vexing problem of circular priority of liens which has .so occupied the courts in recent years. That problem is here involved as it has been in the Federal tax lien cases. In the field of Federal tax liens the problem commonly known as that of “circular priority” arises from the following circumstances. The mortgage lien, by Federal law is prior to a subsequent Federal tax lien; the Federal tax lien is prior to all unpaid local taxes which were not 1 ‘ choate ’ ’ by Federal *1001 standards prior to the filing of the Federal tax lien; the mortgage lien, by State law, is subordinate to all unpaid local taxes.
Here, the court is asked by the Federal Government to rule that a Federally-held judgment lien is entitled to priority over subsequently-arising local real estate taxes. Since the plaintiff in its brief has disavowed any claim for insurance premiums advanced to protect its security, that matter is not before the court and the problem under consideration is accordingly restricted to local real estate taxes and similar charges arising subsequent to the Government’s judgment lien.
The court, as a result of careful reading of the comprehensive memoranda and supplemental memoranda of the contending parties, augmented by its own research, is constrained to reach the conclusion that in the present state of the law the Federal Government’s position must be sustained.
Although the lien here involved is not a tax lien, it is nevertheless a Federally-held lien. Because it occupies this status, it is entitled to priority over subsequently accrued real estate taxes and like charges. (United States v. Buffalo Sav. Bank, 371 U. S. 228; United States v. New Britain, 347 U. S. 81; Jamaica Sav. Bank v. Morgan, No. 62-C-780, E. D. N. Y., Dec. 20, 1962.) The nature and extent of the interest in or claim upon property which is created by virtue of a judgment is to be determined according to State law. However, once it is found that such judgment has brought into being a lien in favor of the Federal Government upon real property, the question of the priority of such lien vis-a-vis competing liens is to be determined according to Federal law. (See Aquilino v. United States, 363 U. S. 509, 512-514; see, also, Aquilino v. United States of America, 10 N Y 2d 271, 274.)
This rule of priority for Federally-held liens finds its support in the principle that Federally-owned property and Federally-held interests in property are immune from direct or indirect local taxation unless such immunity has been waived by the Federal Government. Once the Federally-held lien attaches, a municipal taxing authority possesses no power to reduce or impair the interest of the Federal Government by subordinating it to local taxes which subsequently arise. (United States v. Ringwood Iron Mines, 251 F. 2d 145; United States v. City of Greenville, 118 F. 2d 963.) The principle so frequently applied to Federal tax liens is equally applicable to other property interests of the Federal Government. (Jamaica Sav. Bank v. Morgan, supra.)
*1002 The plaintiff has sought on this motion to persuade the court that its discretion should be exercised pursuant to the pertinent statute (Real Property Actions and Proceedings Law, § 1354, subd. 2) to direct that the sale of the mortgaged premises be made subject to real estate taxes. The court has considered the argument advanced by the plaintiff in support of its position and is aware that in respect of Federal tax liens it has been suggested that ‘ ‘ every effort should be made to have a judgment entered which provides for sale 1 subject to unpaid local taxes ’ or is ‘ silent as to the payment of unpaid local taxes ’ ”. (Mitchell, “ A Mortgagee’s Priority over Federal Tax Liens for Inchoate Advances or Charges or a Realistic Approach to the Problem by Means of the Circular Priority Formula ”, 42 Title News 6, 21-23 [July, 1963].) In this connection, it must be pointed out that in Buffalo Savings Bank (supra), the County Court of Erie County granted a judgment of foreclosure of sale which provided for a sale of the mortgaged premises free of the Federal tax lien but subject to all real property taxes and assessments (Buffalo Sav. Bank v. Victory, 17 Misc 2d 564). On appeal the Appellate Division reversed and remanded the action to the County Court stating that the discretionary power of the court to direct a sale subject to local real estate taxes might not properly be exercised in a case such as it had before it in which there was presented the problem of circular priorities. (11 A D 2d 158.) Subsequently, the County Court directed the Referee to pay, as expenses of the sale, all real estate taxes, assessments and water rates which were liens upon the mortgaged premises. (Buffalo Sav. Bank v. Victory, 26 Misc 2d 443.) This determination of the County Court was appealed to the Appellate Division and then to the Court of Appeals in which latter court the County Court judgment was sustained. (Buffalo Sav. Bank v. Victory, 11 N Y 2d 31, revg. 13 A D 2d 207.) Upon appeal to the United States Supreme Court, the Court of Appeals was reversed and it was held that the Federal tax lien had priority over subsequently arising liens for local real estate taxes. (United States v. Buffalo Sav. Bank, 371 U. S. 228.) It may well be that plaintiff places reliance upon the fact that the Supreme Court of the United States did not expressly rule on the question of a sale subject to unpaid real estate taxes. In this connection, it has been noted that when Buffalo Savings Bank was again before the Court of Appeals, on remand, the argument was advanced that the Supreme Court had not decided the issue of a sale subject to local real estate taxes. This argument apparently did not persuade the Court *1003 of Appeals which determined that such a direction would be “ an abuse of the court’s discretion” in that case. (Buffalo Sav. Bank v. Victory, 12 N Y 2d 1100; see, also, Creedon, “ On Mortgage Foreclosures and Federal Tax Liens, etc.”, supra, p. 1122.)
The court has reached the conclusion that the judgment of foreclosure of sale to be entered in this action may not direct that the sale be made subject to unpaid taxes but shall direct that the mortgaged premises be sold free and clear of all junior liens after payment of plaintiff’s mortgage and costs as directed in Buffalo Sav. Bank v. Victory (13 A D 2d 207). Plaintiff’s motion is denied to the extent indicated and otherwise granted.
Settle judgment on notice, conforming insofar as practicable to the form set forth in the case last cited.